**UNITED STATES of America,**

**v.**

**Craig Arthur LEITNER, Defendant.**

**No. 85 Misc. 0486/86 CV 387.**

United States District Court,
E.D. New York.

Feb. 6, 1986.

---

740

Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y. (Reena Raggi, Asst. U.S. Atty., of counsel), for plaintiff.

Litman, Kaufman, Asche & Lupkin, New York City (Jack Litman, of counsel), for defendant.

## MEMORANDUM

NICKERSON, District Judge.

The matter is here on the government's appeal from the order of the Magistrate admitting defendant to bail on conditions.

The complaint sought a warrant for the provisional arrest of defendant pursuant to the Treaty of Extradition between the United States and Israel, and alleges, in substance, the following. Israel has charged defendant with attempted murder, arson, attempted arson and conspiracy to commit a felony, all extraditable offenses under the Treaty. On September 24, 1984, the Magistrate's Court in Jerusalem issued a warrant for the arrest of defendant based

on the following six acts of terrorism committed by him.

(1) On March 4, 1984, he and others planned and near the city of Ramallah carried out an armed attack on a bus carrying Arab workers from their village to their jobs. Defendant was active in planning the attack. He drove the participants to the site of the attack, and while an accomplice fired an M–16 rifle at the bus, wounding six Arab civilians, defendant waited to drive them away.

(2) Defendant and others planned and on the night of July 21–22, 1983 carried out an attack on Arab vehicles in Hebron. They planned the attack in Jerusalem, where they bought kerosene. They then drove to Hebron, chose three parked vehicles belonging to an Arab resident, threw kerosene on them, and ignited them.

(3) Defendant and others planned and carried out another such attack on the night of July 31–August 1, 1983. They again drove to Hebron, where defendant and another threw kerosene on and set fire to a parked Arab bus.

(4) On the same night defendant and others planned and carried out an attack on the editorial offices of the Arabic language newspaper, "Al Fajr", in Jerusalem. On their return to Jerusalem from Hebron, defendant and the others went to the newspaper's offices, where defendant threw a "Molotov cocktail" through a window, setting the offices on fire.

(5) On the night of December 20–21, 1983, defendant and others chose three parked cars of Arabs in the Wadi Joz district of Jerusalem. Defendant threw kerosene on them, and another of the conspirators set them on fire.

(6) Defendant and others planned and carried out an arson attempt against an Arab house in the Shuafat area of Jerusalem on the night of December 22, 1983. They prepared two "Molotov cocktails" and, while the family in the house was asleep, defendant threw them toward a window. They missed the window and hit a wall of the adjacent house.

Israeli police arrested defendant and the others suspected of having committed these acts. Initially defendant cooperated with the police, gave statements, and agreed to testify for the prosecution at the trials of the others. He was then released on bail. The other four suspects were indicted. Three admitted their participation and were convicted and sentenced by the Jerusalem District Court. The fourth denied the charges. When the time came for defendant to testify he had fled to the United States. The District Court acquitted the fourth accused partly because defendant had failed to testify.

Defendant says he had received serious threats that if he testified against the remaining accused he would be killed, as would members of his immediate family. He apparently made no effort to seek the protection of the Israeli government. Nor did he repudiate his agreement with the Israeli prosecutors and go to trial in his own case. Instead he chose to flee.

He claims he is the respected and responsible son of parents who have lived for more than thirty years in Queens. He submits letters from the family rabbi, one of his professors at Pace Law School, and his law school roommate, all attesting to defendant's sense of responsibility and their belief that he would not flee. His papers detail the various threats on his life.

The government has informed the court that the maximum sentences that an Israeli court could impose on defendant are twenty years for attempted murder, fifteen years for arson, ten years for attempted arson, and seven years for conspiracy to commit a felony, or a total of fifty two years. Defendant says that the court is highly unlikely to impose a sentence approaching the maximum since the three others who were convicted received sentences ranging from a year and a half to five years.

In extradition proceedings the presumption is against bail. *Wright v. Henkel,* 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903). Only if the court finds "special circumstances" will it grant bail. *Id.; United States v. Messina,* 566 F.Supp. 740, 742 (E.D.N.Y.1983), and cases cited. Defendant asserts that he has shown he is not a bail risk because of his otherwise "unblemished" background, his family, and his current legal education.

Learned Hand in *In re Mitchell,* 171 F. 289, 289 (S.D.N.Y.1909), interpreted the decision in *Wright v. Henkel, supra,* to mean that a district court could exercise its power to grant bail "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." Whether this remains the test is in dispute. *See United States v. Messina, supra.*

But in any event because of the nation's concern for its relationship with other countries, the court must apply standards in an extradition case far more strict than those applied in a domestic criminal case. This country has an obvious stake in its ability to produce extradited persons. That interest is magnified where a defendant is charged with acts of terrorism, a matter of increasingly grave concern to this and every other civilized country. Therefore only circumstances special to the defendant will justify any risk of flight in this case.

Learned Hand found special circumstances where a defendant was accused in Canada of larceny and needed to be free to consult with counsel about a civil case then on trial on which "his whole fortune depends." *In re Mitchell, supra,* 171 F. at 290. Similarly the Court of Appeals for this circuit approved the District Court's grant of bail in a case where there was no suitable facility to hold the defendant, who was only sixteen when he allegedly committed armed robbery in Hong Kong. *Hu Yau-Leung v. Soscia,* 649 F.2d 914, 920 (2d Cir.), *cert. denied,* 454 U.S. 971, 102 S.Ct. 519, 70 L.Ed.2d 389 (1981).

Defendant has shown no such special personal hardship. He chose flight when other alternatives were apparently open to him. He faces the possibility of a very heavy sentence. This court does not speculate as to what an Israeli court will do,

what persuaded the Israeli court to impose on the other co-conspirators sentences of only up to five years, or what effect the very fact of defendant's flight will have on his sentence if he is convicted.

Defendant does not contend in this court that there is no probable cause to believe he committed the terrorist acts. He has not challenged the government's assertion that the offenses charged in Israel are extraditable.

In the light of the seriousness of the charges, defendant's prior flight, the lack of a showing of special hardship to defendant, and the importance of maintaining the United States relations with Israel, particularly in a case that involves terrorism, this court reverses the Magistrate and directs that the defendant be held. So ordered.